IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUDY L. WREN,                    )
                                 )
                Plaintiff,       )
                                 )
vs.                              )        Case No. 06-1158-MLB
                                 )
MICHAEL J. ASTRUE,[1]            )
Commissioner of                  )
Social Security,                 )
                                 )
                Defendant.       )
_____  )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner

_____

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On September 2, 2005, administrative law judge (ALJ) George

M. Bock issued his decision (R. at 15-25).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of June 18, 2002 (R. at 15, 20).  At step two, the ALJ found that plaintiff had the following severe impairments: anxiety/depression, a personality disorder with somatoform features, and degenerative disc disease of the lumbar spine (R. at 20).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 20).  After establishing plaintiff's RFC, the ALJ determined at step four that plaintiff cannot perform her past relevant work (R. at 23).  At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy; therefore the ALJ concluded that plaintiff was not disabled (R. at 23-24).

**III.  Did the ALJ err in his analysis of the opinions of treating physicians?**

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must

nonetheless specify what lesser weight he assigned the treating

physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083

(10th Cir. 2004).  A treating source opinion not entitled to

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    In his RFC findings, the ALJ found that plaintiff was

moderately limited: (1) in the ability to understand, remember,

and carry out detailed instructions, (2) maintain attention and

concentration for extended periods, and (3) interact

appropriately with the general public(R. at 21).[2]  Plaintiff

alleges that the ALJ failed to give proper consideration to the

opinions of Dr. Hon and Dr. Sayeed, who were treatment providers

to the plaintiff.  The ALJ discussed their opinions as follows:

        The undersigned is not unmindful of the
        Medical Source Statement (Mental), dated

_____

        [2]The RFC findings of the ALJ included various physical
limitations, but those findings are not contested by the
plaintiff in this case.

November 5, 2004, in which Dr. Hon rated the
claimant as markedly limited in sustained
concentration and persistence, in social
interaction, and in adaptation (Exhibit
19F),[3] nor the letter, dated June 22, 2005,
in which Dr. Sayeed stated that he did not
believe that the claimant was employable
outside her home without maximum psychiatric
rehabilitation and vocational training
(Exhibit 25F). However, neither the marked
limitations from Dr. Hon nor the opinions
from Dr. Sayeed are compatible with their
office notes. When seen by Dr. Hon on
November 29, 2004, the claimant was alert and
oriented, she was pleasant, her affect
continued to be improved and near euthymic,
there was no noticeable anxiety, her judgment
and insight were fair, eye contact was fairly
good, there was no evidence of drowsiness or
intoxication, and there was no evident pain.
On May 16, 2005, the claimant talked about
activities for pleasure, playing bingo,
garage sales, and reading (Exhibit 21F). In
his letter, Dr. Sayeed stated that he did not
believe that she was employable outside her
home without maximum psychiatric
rehabilitation and vocational training
(Exhibit 25F), but Dr. Sayeed is not a
psychologist or psychiatrist. As neither Dr.

---

[3]In the medical source statement (mental) Dr. Hon rated
plaintiff in 20 specific categories listed under the following 4
general categories:

Understanding and memory: moderately limited in 2 categories and
markedly limited in 1 category.

Sustained concentration and persistence: moderately limited in 2
categories and markedly limited in 6 categories.

Social interactions: not significantly limited in 1 category,
moderately limited in 1 category, markedly limited in 3
categories.

Adaptation: markedly limited in 4 categories.   (R. at 456-457).

> Hon's limitations nor Dr. Sayeed opinions are
> supported by the record as a whole, they
> cannot be given substantial or controlling
> weight. (20 CFR 404.1527, 416.927; Social
> Security Rulings 96-2p and 96-5p). There is
> no need to recontact either of these treating
> sources since the undersigned finds the
> record to be adequate for the evaluation of
> their opinions.

(R. at 22-23).

Plaintiff concedes that Dr. Sayeed is not a specialist in mental health care, and that his treatment notes are difficult to read.  While plaintiff does not believe that Dr. Sayeed's opinions are entitled to controlling weight, plaintiff argues that his opinions comport with the opinions of Dr. Hon and are therefore probative for the weight the ALJ should have accorded Dr. Hon's opinions (Doc. 11 at 5).

Dr. Sayeed stated on June 22, 2005 that he did not believe that plaintiff is employable outside her home without maximum psychiatric rehabilitation and vocational training (R. at 587). The ALJ first argues that Dr. Sayeed's opinion is not compatible with his office notes.  However, the ALJ fails to point to any particular aspect of Dr. Sayeed's treatment notes which are incompatible with his opinion of June 22, 2005.  The court finds that the ALJ's conclusory, boilerplate statement that Dr. Sayeed's opinion is not compatible with his office notes without citing to any office notes that are incompatible with his opinion is improper.  The ALJ is charged with carefully considering all

8

the relevant evidence and linking his findings to specific evidence.  <u>Barnett v. Apfel</u>, 231 F.3d 687, 689 (10th Cir. 2000). To reject a treating physician's opinion requires "'specific, legitimate reasons'".  <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996).  Furthermore, as plaintiff indicated in her brief, his office notes are largely illegible and the court could not find anything in his treatment notes which are not compatible with his opinion (R. at 385-392, 587-595).  Thus, the ALJ's contention that Dr. Sayeed's opinion is not compatible with his office notes is not supported by the evidence.

The only other reason given for discounting Dr. Sayeed's opinion is that Dr. Sayeed is not a psychologist or a psychiatrist.  However, 20 C.F.R. § 404.1527(a)(2) indicates that medical opinions are statements from physicians, psychologists and other acceptable medical sources that include physical or mental restrictions.  A treating physician is qualified to give a medical opinion as to a claimant's mental state as it relates to their inability to work and the ALJ may not discredit their opinion on the ground that the treating physician is not a psychiatrist.  <u>Nguyen v. Barnhart</u>, 170 Fed. Appx. 471, 473 (9th Cir. March 8, 2006); <u>Lester v. Chater</u>, 81 F.3d 821, 833 (9th Cir. 1995); <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987). Dr. Sayeed, a physician, is qualified to evaluate plaintiff's mental limitations.

9

Finally, the court would note that Dr. Sayeed's opinion was simply a general statement that plaintiff could not work.  In the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078 (10th Cir. 2004), the court held as follows:

> Third, **the ALJ's statement that Dr. Baca's records did not give a reason for his opinion that claimant is unable to work triggered the ALJ's duty to seek further development of the record before rejecting the opinion.** If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1)...
>
> If the ALJ concluded that Dr. Baca failed to provide sufficient support for his conclusions about claimant's mental limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of prescribed medications on her ability to work, he should have contacted Dr. Baca for clarification of his opinion before rejecting it. The ALJ did not do so.

366 F.3d at 1084 (emphasis added).  In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, **if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.**

1996 WL 374183 at *6 (emphasis added).  Therefore, when this case is remanded, the ALJ should recontact Dr. Sayeed for clarification of his opinion before rejecting it because the basis for his opinion is not apparent from the record.

The ALJ also discounted Dr. Hon's opinions because they were not compatible with his office notes.  The ALJ specifically mentioned an office note of November 29, 2004 indicating that plaintiff was alert, oriented, pleasant, had an improved affect, was near euthymic,[4] had no noticeable anxiety, had fair judgment and insight, had fairly good eye contact, no evidence of drowsiness or intoxication, and no evident pain (R. at 22-23, 516).  The ALJ also referenced a May 16, 2005 medical record stating that plaintiff talked about activities for pleasure, playing bingo, garage sales and reading (R. at 23, 529).

There are a number of problems with the ALJ's analysis of the records of Dr. Hon and COMCARE.  First, the ALJ only mentions those aspects of the November 29, 2004 medical record which are more favorable to the ALJ's determination that plaintiff was not disabled, while not mentioning aspects of that report that are less favorable to his decision.  The information cited by the ALJ is from that portion of the record entitled "OBJECTIVE DATA."

_____

[4]Euthymic is a medical term used to describe a psychological state that is statistically or otherwise normal, neither elated nor depressed, or a person in such a psychological state, someone whose mood is moderate, peaceful.  http://www.answers.com (May 2, 2007).

11

The entirety of that portion of the record is as follows:

> She is alert and oriented, goal directed,
> pleasant **but is extremely histrionic and
> passive aggressive in the office as noted
> above**. Her affect continues to be improved,
> near euthymic in the office with no
> noticeable anxiety much opposite to what she
> describes. Overall she has had fair judgment
> and insight **except to her somatic
> preoccupations which she has little insight
> to but insight appears to certainly not be
> getting any better, may be somewhat worse**.
> Eye contact is fairly good as is posture with
> no evidence of drowsiness whatsoever or
> intoxication and not any evident pain, again
> despite what she subjectively describes.

(R. at 516, emphasis added).  The bold print in the medical

report are those portions not mentioned by the ALJ in his

decision, and they reflect plaintiff's extremely histrionic and

passive aggressive behavior, her somatic preoccupations, and her

lack of insight related to her somatic preoccupations.  Reading

this portion of the report in its entirety paints a very

different picture than that given by the ALJ in his decision.

The ALJ found that plaintiff's severe impairments included a

personality disorder with somatoform features (R. at 20).  Dr.

Hon's report noted her somatic preoccupations and her related

lack of insight, which may be getting somewhat worse.  An ALJ is

not entitled to pick and choose from a medical opinion or medical

treatment records, using only those parts that are favorable to a

finding of nondisability.  Robinson v. Barnhart, 366 F.3d 1078,

1083 (10th Cir. 2004); Lee v. Barnhart, 117 Fed. Appx. 674, 678

n.2 (10th Cir. Dec. 8, 2004).  The ALJ cannot impermissibly ignore the evidence as a whole while choosing instead to abstract selective pieces of evidence favorable to their position.  See O'Connor v. Shalala, 873 F. Supp. 1482, 1491 (D. Kan. 1995); Jones v. Sullivan, 804 F. Supp. 1398, 1406 (D. Kan. 1992); Claassen v. Heckler, 600 F. Supp. 1507, 1511 (D. Kan. 1985).  An ALJ, in addition to discussing the evidence supporting his decision, must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); see Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).  The ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

Second, none of the records cited by the ALJ are clearly incompatible with the findings of Dr. Hon that plaintiff is markedly limited in 14 out of 20 categories.  Other than to assert that the office notes are not compatible with Dr. Hon's marked limitations, the ALJ failed to explain how they are not compatible.  The observations that plaintiff is alert, oriented, pleasant, shows improved affect, shows a lack of anxiety, has good eye contact, is not drowsy or intoxicated, and is not in pain are not, on their face, clearly incompatible with findings of marked limitations in the general categories of understanding

and memory, sustained concentration and persistence, social

interaction, or adaptation.[5]   Neither is the fact that plaintiff

_____

[5]The 14 specific categories in which plaintiff was found to
be markedly limited are as follows:

A.   Understanding and memory
     3.   The ability to understand and remember detailed
          instructions.

B.   Sustained concentration and persistence
     5.   The ability to carry out detailed instructions.
     6.   The ability to maintain attention and concentration for
          extended periods.
     7.   The ability to perform activities within a schedule,
          maintain regular attendance, and be punctual within
          customary tolerances.
     8.   The ability to sustain an ordinary routine without
          special supervision.
     9.   The ability to work in coordination with or proximity to
          others without being distracted by them.
     11.  The ability to complete a normal workday and workweek
          without interruptions from psychologically based symptoms
          and to perform at a consistent pace without an
          unreasonable number of rest periods.

C.   Social interaction
     12.  The ability to interact appropriately with the general
          public.
     14.  The ability to accept instructions and respond
          appropriately to criticism from supervisors.
     15.  The ability to get along with coworkers or peers without
          distracting them or exhibiting behavioral extremes.

D.   Adaptation
     17.  The ability to respond appropriately to changes in the
          work setting.
     18.  The ability to be aware of normal hazards and to take
          appropriate precautions.
     19.  The ability to travel in unfamiliar places or use public
          transportation.
     20.  The ability to set realistic goals or make plans
          independently of others.  (R. at 456-457).

talked about activities for pleasure including bingo, garage
sales and reading in any way incompatible with Dr. Hon's
opinions.  As the court found in <u>Shontos v. Barnhart</u>, 328 F.3d
418, 426-427 (8th Cir. 2003), the ALJ's assertion that the
treating source opinions were inconsistent with the record, and
therefore should not be afforded controlling or great weight, is
not borne out by the record.[6]  At most, as the court noted in
<u>Shontos</u>, the record is deficient in documentation to support the
opinions of the treatment providers.

Finally, the ALJ stated that the opinions of Dr. Hon and Dr.
Sayeed are not supported by the record as a whole, and therefore
cannot be given substantial or controlling weight.  However, the
specific limitations expressed by Dr. Hon appear to be consistent
with Dr. Sayeed's general opinion that plaintiff cannot work.  In
addition, Dr. Hon stated on November 10, 2003 that plaintiff
could not work because of severe and persistent mental illness,
not controllable by medications or other treatment, causing
severe functional limitations precluding competitive employment,
and requiring ongoing psychiatric or psychological treatment (R.

---

[6]In <u>Shontos</u>, the court stated that no medical source
provided an opinion that the fact that Ms. Shontos did better
while taking prescribed medications negated Dr. Burn's opinion
that Ms. Shontos would have difficulty with detailed
instructions.  <u>Shontos</u>, 328 F.3d at 427.  In this case, there is
no medical opinion that the observations noted by Dr. Hon or that
her activities for pleasure negated Dr. Hon's opinion that
plaintiff had marked limitations in a number of categories.

at 317-318).  This opinion by Dr. Hon, which the ALJ did not
mention in his decision, is clearly consistent with Dr. Sayeed's
opinion that plaintiff cannot work.

Furthermore, the record contains a consultative mental
status examination by Dr. Allen (R. at 313-316).  Dr. Allen's
summary included the following:

> It appears that Ms. Wren's difficulties have,
> for a large part, been physical problems. The
> emotional difficulties for her tend to kind
> of come along secondary to the physical
> problems, that is that she gets stressed out
> by her physical problems and then has
> difficulty with coping with stress. She is
> able to understand and carry out very simple
> instructions. Her attention and concentration
> are not all that good because she is
> distracted by her pain and by her worries.
> She would have difficulty working in any kind
> of job setting that involves people because
> she does tend to be a very timid [person] and
> fearful of others. She would be able to
> manage some of the pace of a work
> environment, but she does indicate that her
> physical problems have routinely gotten in
> the way. From a standpoint of emotional
> problems, what sounds like panic attacks,
> would sometimes present some difficulties for
> her in that it would distract her away from
> production standard[s].  She is fairly
> persistent at what she attempts to do.

(R. at 315-316).  The court finds nothing in Dr. Allen's report
which is clearly inconsistent with the opinions expressed by Dr.
Hon and Dr. Sayeed.  In fact, the findings of Dr. Allen that
plaintiff's attention and concentration are not that good, that
plaintiff would have difficulty working in any kind of job
setting that involves people, and that her panic attacks would

16

distract her away from production standards, appear to be consistent with many of Dr. Hon's findings of marked limitations in the general categories of sustained concentration and pace, social interaction, and adaptation.

The ALJ also failed to indicate why his RFC findings did not incorporate all of the limitations mentioned by Dr. Allen.  For example, the ALJ indicated that plaintiff only had a moderate limitation in plaintiff's ability to interact appropriately with the general public (R. at 21).  However, Dr. Allen stated that plaintiff would have difficulty working in any kind of job setting that involves people because she is timid and fearful of others.  The ALJ, without explanation, failed to place any limitation on her ability to work in a job setting that involves people generally, including coworkers and supervisors, and not just the general public.  By contrast, Dr. Hon found plaintiff not only markedly limited in her ability to deal with the general public, but he also found plaintiff markedly limited in her ability to deal with coworkers and supervisors (R. at 456-457, ## 9, 14, 15).

For the reasons set forth above, the court finds that the ALJ's decision to discount the opinions of Dr. Hon and Dr. Sayeed is not supported by substantial evidence.  Therefore, this case shall be remanded in order for the ALJ to properly evaluate their opinions, and to consider them in light of the mental status

17

examination conducted by Dr. Allen.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 4, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

18